UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> KARI DAWN YOUNT ) <br> ) <br> Defendant ) | Criminal Action No. 18-cr-4-GFVT-CJS <br> Civil Action No. 20-cv-51-GFVT-CJS <br><br> **REPORT AND RECOMMENDATION** |

\*\*\* \*\*\* \*\*\* \*\*\*

Kari Dawn Yount, *pro se*, has filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (R. 51; *see* R. 59). The Government has responded (R. 67), and Yount has failed to file a reply. Pursuant to local practice, this matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b). For the reasons below, it will be recommended that Yount's § 2255 Motion **be denied**.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

In 2017, law enforcement officers with the Frankfort Police Department responded to the scene of the overdose death of C.N.M., who was found in the bathroom of his home. (R. 42, Page ID 108). At the scene, officers located a spoon with suspected drug residue, a paper bindle containing suspected drugs, a syringe, a tan or brown substance in C.N.M.'s pocket, and a cell phone. (*Id.*). Later testing of the drug paraphernalia revealed the presence of a mixture containing heroin and acrylfentanyl. (*Id.* at Page ID 109). Toxicological testing revealed that C.N.M. had multiple substances in his blood at the time of his death, including morphine, 6-monoacetylmorphine (an active metabolite of heroin), benzoylecgonine (the inactive metabolite of cocaine) and ethanol. (*Id.* at Page ID 110). Michael Ward, a forensic toxicologist, concluded

that C.N.M. would not have died had he not ingested heroin. (*Id.*). Additionally, investigators reviewed messages from C.N.M.'s phone, which indicated that Yount was the person who sold C.N.M. the drugs that killed him.[1] (*Id.* at Page ID 109).

Yount was indicted on one count of knowingly and intentionally distributing a mixture or substance containing a detectable amount heroin, the use of which resulted in the overdose death of C.N.M, in violation of 21 U.S.C. §§ 841(a)(l) and (b)(1)(C). (R. 1, Page ID 1). The indictment noted that the mandatory minimum sentence for this offense was "[n]ot less than 20 years imprisonment." (*Id.* at Page ID 2). Yount's counsel filed a motion early in the case for a psychological or psychiatric evaluation of Yount pursuant to 18 U.S.C. § 4241(a) & (b) to determine her mental competency to stand trial, which the Court granted. (R. 13; R. 15). At the competency hearing, Yount and the Government waived introduction of other evidence and waived the right to examine and cross-examine Dr. Ryan Nybo, who prepared a report opining that Yount was competent. (R. 31; R. 32). Neither Yount nor the Government challenged the Court's subsequent determination that Yount was competent. (R. 33; R. 34).

Yount entered into a plea agreement, pleading guilty to the distribution offense charged in the indictment. (R. 42, Page ID 107). Both she and the Government agreed, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), to certain recommended sentencing guidelines calculations. (*Id.* at Page ID 111). The plea agreement further provided that Yount would waive various rights, such as the right to appeal her guilty plea and conviction and to collaterally attack her guilty plea, conviction, and sentence. (*Id.* at Page ID 112). And like the indictment, the plea agreement acknowledged that the mandatory minimum punishment for Yount's charged offense was "not less than 20 years" in prison. (*Id.* at Page ID 110). This mandatory minimum sentence

---

[1] One of Defendant's messages to C.N.M. about the drugs stated, "This shit is strong and I'm not gonna cut it don't do it all at once." (R. 42, Page ID 109).

2

was imposed because of C.N.M.'s death, as § 841(b)(1)(C) provides for an overdose death enhancement, which is "a term of imprisonment of not less than twenty years or more than life," if a victim's "death or serious bodily injury results from the use of [a controlled substance]." In July 2019, Yount was sentenced to 252 months in prison. (R. 49).

Yount did not appeal; however, in June 2020, she filed the instant § 2255 Motion, raising four grounds for relief. (R. 51). Upon initial review under Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court concluded that all four grounds were so inadequately developed that Yount risked summary dismissal. (*See* R. 55, Page ID 159). But rather than recommending outright dismissal of Yount's § 2255 Motion, Yount was given the opportunity to submit a memorandum developing the factual and legal bases for her grounds. (*Id.* at Page ID 160). Yount filed a supporting memorandum providing enough development of at least some of her grounds to avoid, under Rule 4(b), the recommendation that her § 2255 Motion be summarily dismissed in its entirety. (R. 59). In her memorandum, Yount challenges her: (1) counsel's advice to waive her competency hearing; (2) counsel's advice about her mandatory minimum sentence; (3) counsel's alleged deficiency in failing to advise her of the availability of a defense to the overdose death enhancement based on *Burrage v. United States*, 571 U.S. 204 (2014); and (4) counsel's advice about her appellate rights. The Government has responded, arguing that Yount's grounds fail on their merits. (R. 67). Although this Court permitted Yount the opportunity to file a reply (R. 68) and then, at Yount's request (R. 69), extended the deadline for filing one (R. 70), Yount did not file a reply.

**II.   ANALYSIS**

  **A.   Standards of Review**

3

Under 28 U.S.C. § 2255(a), a federal prisoner may seek relief on grounds that her conviction or sentence violated the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. To succeed on a § 2255 motion alleging constitutional error, a federal prisoner "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief for a non-constitutional error, a federal prisoner "must establish a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *Id.* (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)). In sum, a federal prisoner must allege in her § 2255 motion that: (1) her conviction was the result of an error of constitutional magnitude; (2) her sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). A federal prisoner must prove her allegations by a preponderance of the evidence. *Pough*, 442 F.3d at 964.

Because all four of Yount's asserted grounds argue that her attorney was ineffective in violation of her Sixth Amendment right to effective assistance of counsel, the standard from *Strickland v. Washington*, 466 U.S. 668 (1984) guides this Court's review. To successfully assert an ineffective assistance of counsel claim, a defendant must prove both deficient performance and prejudice. 466 U.S. at 687. To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* A defendant meets this burden by showing "that counsel's

4

representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id*. at 688. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*.

To prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id*. at 695.

Courts may approach the *Strickland* analysis in any order and an insufficient showing on either prong ends the inquiry. *Id*. at 697. ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

    **B.**    **Yount's Grounds**

        **1.**    **Counsel was not ineffective in connection with Yount's competency hearing**

Yount's first ground states that she was "[d]enied [a] competency hearing after evaluation." (R. 59, Page ID 186). While this statement implies that Yount is arguing that *the Court* improperly

5

denied her a competency hearing, the Court does not interpret Yount's ground to allege *Court error* because the body of Yount's memorandum aims her dissatisfaction *at her counsel*. (R. 59, Page ID 186 ("On the day of the hearing I was told by . . . my attorney to waive the hearing. I did as advised by counsel but in hindsight I should have been allowed the hearing to determine my competency or lack of at the time.").[2] Accordingly, the Court interprets this ground to argue that Yount's counsel was ineffective for advising her to waive her competency hearing. The Government likewise interprets this ground as attacking counsel's performance and argues that Yount has offered nothing to conclude that she was incompetent. (R. 67, Page ID 266). The Court ultimately agrees; however, it is first necessary to clarify the factual allegation supporting this ground.

While Yount indicates that she was denied a competency hearing, she actually had a competency hearing. (*See* R. 31, Page ID 81 ("The parties appeared as noted for a competency hearing.")). Thus, her ground is based on a factually incorrect premise. However, liberally construing this ground, perhaps Yount means to argue that counsel was ineffective for advising her to waive the introduction of evidence (other than the Psychiatric Report); advising her to waive the right to examine Dr. Nybo; and stipulating to the admissibility of Dr. Nybo's report, findings, and qualifications. (*See* R. 31 (discussing Yount's and the Government's stipulations and waivers at the competency hearing)). However, such an argument fails.

"[T]he failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Drope v. Missouri*, 420 U.S. 162, 172 (1975). In the ineffective assistance context, counsel's failures in connection with "a competency hearing may constitute ineffective assistance of counsel,

---

[2] Minor alterations, such as correcting misspellings, have been made to some of Yount's quoted statements without specifically indicating the changes.

6

'provided there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered.'" *Meeks v. United States*, No. 12-20388, 2015 WL 6550094, at *2 (E.D. Mich. Oct. 29, 2015) (quoting *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001)). The test for competence to plead guilty is whether the defendant possesses "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam)). Here, Yount cannot prevail on this ground because she "has not met [her] burden of proof that [s]he was not mentally competent to stand trial or, in [her] case, to plead guilty." *Byrd v. United States*, 19 F.3d 18 (table decision), 1994 WL 84743, at *1 (6th Cir. 1994).

Instead of offering proof that she was incompetent, Yount offers only summary conjecture, stating that she is "uncertain that [she] was competent" and "able to assist in [her] defense." (R. 59, Page ID 186). Such is not enough to show that she was incompetent to plead guilty. *See Hernandez v. United States*, 141 F.3d 1151 (2d Cir. 1998) (declining to grant § 2255 relief where movant's "present assertions that he was in fact incompetent when he entered his plea [were] conclusory"). Moreover, neither is Yount's brief reference to having been in a "schizophrenic episode" after being arrested enough to show that she was not competent because mental disorders do not necessarily render one legally incompetent to assist in their defense. *See United States v. Davis*, 93 F.3d 1286, 1290 (6th Cir. 1996) ("Although there is some suggestion in the record that the defendant is currently under psychiatric care, even if she were mentally ill, '[i]t does not follow that because a person is mentally ill he is not competent to stand trial.'") (quoting *Newfield v.*

7

*United States*, 565 F.2d 203, 206 (2d Cir. 1977)); *Smith v. Bobby*, No. 3:09-CV-470, 2010 WL 749938, at *4 (N.D. Ohio Feb. 22, 2010) ("Major depression, generalized anxiety, or borderline personality disorders do not necessarily show that a defendant is unable to consult with his or her lawyer or is incapable of understanding the proceedings against him or her."); (R. 59, Page ID 186).

Further, the record indicates that Yount was competent. Dr. Nybo's report, which the Court finds to be persuasive, "opined that [Yount was] competent." (R. 32, Page ID 82). Additionally, the Court noted that Yount's attorney had nothing to contradict this conclusion based on her interactions with Yount, that Yount was composed and respectful throughout the proceedings and understood their nature, and that she spoke freely with the Court and agreed that she was competent.[3] (*Id.* at Page ID 87). Given these circumstances, Yount has failed to show that her counsel was ineffective in connection with her competency hearing.

### 2. Counsel was not ineffective in connection with her advice about Yount's mandatory minimum sentence

Yount's second ground argues that her counsel was ineffective because her attorney misadvised her about her sentencing exposure. (R. 59, Page ID 186). Specifically, she states that her attorney never explained to her that she would face a mandatory minimum sentence of twenty years and told her that, if she "would just sign the plea agreement, the prosecution would agree that [she] be sentenced under 20 years." (*Id.*). The Government argues that this claim fails because the record shows that Yount was repeatedly advised that she faced a mandatory minimum sentence of twenty years. (R. 67, Page ID 267).

---

[3] Yount's counsel has provided an affidavit indicating that, while she initially believed that Yount was incompetent at the beginning of the case, she changed her mind after Yount returned from her competency evaluation, finding her "to be completely different, and insightful." (R. 67-1, Page ID 273).

8

Certainly, "[a] criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003). Here, the record evidence indicates that Yount's attorney explained to her that she would face a mandatory minimum sentence.

First, Yount's plea agreement specifically stated that "[t]he statutory punishment for the charged offense is imprisonment for not less than 20 years." (R. 42, Page 111). Yount signed this plea agreement, which acknowledged that her "attorney ha[d] fully explained this Agreement to [her]."). (*Id.* at Page ID 115). Moreover, at her rearraignment, Yount acknowledged that she signed the plea agreement; that she understood each of the provisions; that nobody "made any promises" to her "that [were] not included" in the agreement, such as "[i]f you'll sign this, I'll guarantee that you'll get a particular sentence"; and that she talked to her lawyer "about the charge, about pleading guilty, [and] about the case generally." (R. 236, Page 236-38). These statements carry greater weight than Yount's newfound allegations of not having been advised about her mandatory minimum sentence and having been promised a sentence of less than twenty years. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Second, even if Yount's attorney had failed to advise her of the mandatory minimum sentence, the presiding District Judge did.

> So you're going to plead guilty to a count of distribution of a mixture or substance containing a detectable amount of heroin, which is a Schedule 1 controlled

9

> substance, and the use of that substance in this instance resulted in an overdose death.
>
> The maximum term of incarceration for that crime is life in prison. But you need to know, there's a mandatory minimum in this case as well of 20 years in prison.

(R. 65, Page ID 245). And when asked if she had any questions about her sentencing exposure, Yount indicated that she had none and pled guilty. (*Id.* at Page ID 247, 254).

Thus, the problem for Yount reveals itself—even assuming that her attorney failed to make clear that she would be serving at least twenty years in prison, "the trial court's proper plea colloquy cured any misunderstanding [s]he may have had about the consequences of [her] guilty plea." *Ramos v. Rogers*, 170 F.3d 560, 561 (6th Cir. 1999).

This ties into the prejudice inquiry under *Strickland*, which requires Yount to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Yount offers no argument as to *Strickland*'s prejudice prong, but presumably her ground implicates that she would not have pled guilty had she been informed of her mandatory minimum sentence and would have proceeded to trial. However, Yount's own words show otherwise—a*fter* the District Judge informed her of the mandatory minimum sentence, *she still pled guilty*. (*See* R. 65, Page ID 254). Accordingly, the record evidence compels the denial of this ground. *See Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.").

### 3. Counsel was not ineffective in failing to pursue a *Burrage* defense

Yount's third ground argues that her attorney gave her "no possible defense to use at trial," which Yount deems to be ineffective because of her discovery of "the case of Burrage." (R. 59,

10

Page ID 187). Specifically, Yount asserts that *Burrage* provides a defense because C.N.M. died of "a mixed drug cocktail," implicating that the heroin she sold was not the but-for cause of his death. (*Id.*). Yount contends that, had she known of the defense purportedly available under *Burrage*, she "would have gone to trial and used this case in [her] defense." (*Id.*). The Government argues that Yount had no defense under *Burrage* and thus counsel could not have been ineffective for failing to advise Yount of such a defense to use at trial. (R. 67, Page ID 269).

"Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). To prove counsel was ineffective in this context, Yount must demonstrate deficient performance by showing that her attorney's advice was not within the range of competency demanded and demonstrate prejudice by showing that there is "a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 56-59.[4]

In *Burrage v. United States*, the Supreme Court addressed overdose death enhancements, holding that "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision . . . unless such use is a but-for cause of the death or injury." 571 U.S. 204, 218-19 (2014). But-for causation occurs when the distributed drug "'combines with other factors to produce' death, and death would not have occurred 'without the incremental effect'

---

[4] "*Hill* . . . applies in the context in which it arose. *Hill* does not, however, provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea negotiations." *Missouri v. Frye*, 566 U.S. 134, 148 (2012). Here, the Court applies *Hill* because its formulation of prejudice is of the type that Yount argues.

of the controlled substance." *United States v. Allen*, 716 F. App'x 447, 450 (6th Cir. 2017) (quoting *United States v. Volkman*, 797 F.3d 377, 392 (6th Cir. 2015)). And *Burrage* rejected the argument that the "use of a drug distributed by the defendant need not be a but-for cause of death, nor even independently sufficient to cause death, so long as it contributes to an aggregate force (such as mixed-drug intoxication) that is itself a but-for cause of death." *Burrage,* 571 U.S. at 214.

Here, it is true that C.N.M.'s blood contained multiple substances when he died, including morphine, 6-monoacetylmorphine (an active metabolite of heroin), benzoylecgonine (the inactive metabolite of cocaine) and ethanol, and a doctor with the Kentucky Medical Examiner's Office "concluded that C.N.M. died from the acute combined toxic effects of heroin, cocaine and ethanol." (R. 42, Page ID 110). However, Toxicologist Michael Ward "reviewed the toxicological results, the autopsy report, the certificate of death, and the KSP lab reports, and rendered an opinion that C.N.M. would not have died had it not been for his ingestion of heroin." (*Id.*; *see* R. 67-2 ("It is my opinion that this individual ingested heroin. The levels of 6- monoacetylmorphine and morphine can be consistent with causing death. The addition of ethanol and the lack of tolerance would serve to intensify the effects."). Accordingly, even though there were multiple substances present in C.N.M.'s blood, Ward's opinion that C.N.M's death would not have resulted but for the use of the heroin that Yount sold him is all that is required to satisfy *Burrage*. Accordingly, Yount cannot establish that her counsel was ineffective for failing to advise her to pursue a *Burrage* defense.

### 4. Counsel was not ineffective in advising Yount that she could still file an appeal

Yount's fourth and final ground is also her most conclusory. The entirety of her argument is as follows: "Upon being told by the Judge that by signing a plea I could not appeal, I tried to back out from signing at that point I was explained by [my attorney] that I could still file appeal.

12

It was not true, and at the time I did not understand." (R. 59, Page ID 187). The Government argues that this ground fails because, contrary to Yount's assertions, she could still appeal her sentence under the plea agreement.[5] (R. 67, Page ID 270).

While Yount did specifically waive "the right to appeal the guilty plea and conviction," she never waived the right to appeal her sentence. (R. 42, Page ID 112). Thus, to the extent that Yount alleges some error by her counsel for advising her that she could still appeal her sentence, she is factually incorrect in asserting that she could not appeal her sentence and this claim fails accordingly. If Yount is arguing that her counsel mistakenly advised her that she could appeal her guilty plea and conviction, this ground fails because Yount has failed to offer any factual or legal support to show that her attorney rendered deficient performance or that she was prejudiced. *See Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) ("Yet, merely conclusory allegations of ineffective assistance like those Wogenstahl makes here, are insufficient to state a constitutional claim.").

### III.   CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may issue only if a defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court explained this requirement in *Slack v. McDaniel*, 529 U.S. 473 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under 28 U.S.C. § 2255). Where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate

---

[5] For her part, Yount's counsel states in her affidavit that Yount never contacted her about filing an appeal during the time period to file a notice of appeal. (R. 67-1, Page ID 273).

13

that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, reasonable jurists would not debate the denial of Yount's § 2255 Motion or conclude that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, it also will be recommended that a certificate of appealability be denied upon the entry of a final order in this matter.

## IV. CONCLUSION AND RECOMMENDATIONS

For the reasons stated above, **IT IS RECOMMENDED** that:

1) Yount's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (R. 51) **be denied;**

2) a Certificate of Appealability **be denied** in conjunction with the entry of a final order denying Yount's § 2255 Motion; and

3) a Judgment in favor of the United States **be entered** in Yount's ancillary action dismissing and striking the ancillary action from the active docket of the Court.

The parties are directed to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen (14) days after being served with a copy of this Report and Recommendation, a

party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Sixth Circuit Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Signed this 10th day of May, 2021.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

J:\DATA\habeas petitions\2255 IAC\18-4-GFVT Yount R&R final.docx